IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| STANISLAV EM,<br>    Petitioner, | §<br>§<br>§ | |
| v. | §<br>§ | EP-26-CV-00411-DB |
| ALEJANDRO MAYORKAS, *Secretary*<br>*U.S. Department of Homeland Security, et*<br>*al.,*<br>    Respondents. | §<br>§<br>§<br>§<br>§ | |

## MEMORANDUM OPINION AND ORDER

On this day, the Court considered the above-captioned case. On February 11, 2026, Petitioner Stanislav filed *pro se* a "Petition for Writ of Habeas Corpus and Emergency Motion for Immediate Release," ECF No. 1. Construed liberally, Petitioner is primarily alleging his detention has become unreasonably prolonged in violation of the Fifth Amendment. *Id.* at 6. After due consideration, the Petition is granted in part.

## BACKGROUND

Petitioner, a native of Kyrgyzstan and a citizen of Uzbekistan, entered the United States on August 28, 2024. ECF No. 4 at 2. He was taken into immigration custody at that time and has never been released into the United States. ECF No. 8 at 1. Petitioner is in full removal proceedings but does not have an administratively final order of removal. *Id.* He appealed an immigration judge's order denying his application for asylum, which remains pending before the BIA. *Id.* To date, Petitioner has been detained in immigration custody over 20 months.[1] Petitioner is being detained under 8 U.S.C. § 1225(b), which requires mandatory detention during the pendency of

---

[1] This total is calculated from the time of Petitioner's August 28, 2024, detention to the time of the instant order.

removal proceedings. ECF No. 4 at 2. There are no facts in the record to suggest Petitioner has ever received an individualized assessment of his dangerousness or flight risk in the over 20 months he has been detained.

On February 11, 2026, Petitioner filed his Petition in this Court. Therein, he alleges his "prolonged detention without release or meaningful bond determination violates the Due Process Clause," and his "[d]etention has become unreasonably prolonged, civil in nature, and punitive in effect." ECF No. 1 at 6. Construed liberally, Petitioner appears to allege a substantive due process violation because his arguments focus on the length of his detention, rather than on any procedures he was denied. Respondents timely responded and filed supplemental briefing. ECF No. 4; ECF No. 8. The Court addresses the parties' arguments in turn.

## **LEGAL STANDARD**

Section 1225(b) applies to an "applicant for admission," that is, "[a]n alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). Under § 1225(b)(1), an applicant for admission "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation" is "normally ordered removed 'without further hearing or review' pursuant to an expedited removal process." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018) (quoting 8 U.S.C. § 1225(b)(1)(A)(i)). All other applicants for admission are covered by § 1225(b)(2), which "serves as a catchall provision," *Jennings*, 583 U.S. at 287, and which mandates detention "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted," 8 U.S.C. §

1225(b)(2)(A). But if the alien applies for asylum and has a credible fear of persecution, "the alien shall be detained for further consideration of the application." 8 U.S.C. § 1225(b)(1)(B)(ii).[2]

In *Jennings v. Rodriguez*, the Supreme Court, as a matter of statutory interpretation, held Immigration and Nationality Act ("INA") provisions applicable primarily to detention of aliens seeking entry to United States did not implicitly place a six-month limit on detention or require periodic bond hearings. 583 U.S. at 282. As such, there is nothing in the statute that placed any reasonable time limits on how long a noncitizen could be detained in immigration custody pending the outcome of their removal proceedings. *Jennings*, however, did not reach the merits of the constitutional challenge before it. *Id.* at 312 ("Because the Court of Appeals erroneously concluded that periodic bond hearings are required under the immigration provisions at issue here, it had no occasion to consider respondents' constitutional arguments on their merits . . . .[W]e remand the case to the Court of Appeals to consider them in the first instance.").[3] The precise question of whether the Constitution places any reasonable time limits on immigration detention without any individualized assessment in the pre-final order of removal context remains unsettled in the Supreme Court and in the Fifth Circuit. Assuming a time limit exists and detention becomes unreasonable, the Due Process Clause would demand a hearing, at which the Government bears

---

[2] Upon a positive credible fear determination, an alien is placed in section 240 removal proceedings, rather than the expedited removal proceedings described above, for a determination of the asylum claim. *See* 8 C.F.R. § 1235.6(a)(1)(ii).

[3] *See generally Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1200 (9th Cir. 2022) ("The Supreme Court in *Jennings* did not reach the alleged unconstitutionality of immigration detention absent the procedural requirements we had read into the statute, and instead remanded for consideration of the constitutional question in the first instance. [] We in turn remanded to the district court, which has not yet issued a decision. *See Rodriguez v. Marin*, 909 F.3d 252, 255 (9th Cir. 2018); *Rodriguez v. Barr*, No. 20-55770, 2021 WL 4871067 (9th Cir. Oct. 19, 2021)").

the burden of proving that continued detention is necessary to fulfill the purposes of the detention statute.

## DISCUSSION

Respondents argue that since Petitioner is subject to mandatory detention under § 1225(b), which does not statutorily require he be given a bond hearing, any unconstitutionally prolonged detention claim is merely speculative. ECF No. 4 at 12. Alternatively, Respondents argue Petitioner has no claim for relief here because *Zadvydas v. Davis,* the only Supreme Court decision to address the constitutionality of an immigration statute with no built-in periodic bond hearings to justify continued detention, only applies in the post-final order of removal context, and not to Petitioner who remains in removal proceedings. *See* ECF No. 8 at 1. Before addressing the question of whether Petitioner's detention in this case has become unreasonably prolonged, the Court addresses whether the Fifth Amendment's Due Process Clause applies to 8 U.S.C. § 1225(b). After due consideration, this Court finds Section 1225(b)(2) is subject to a reasonable time limitation based on constitutional principles. Once detention becomes unreasonable, the Due Process Clause demands a hearing, at which the Government bears the burden of proving that continued detention is necessary to fulfill the purposes of the detention statute.

A. The Fifth Amendment's Due Process Clause imposes a reasonableness requirement on detention pursuant to 8 U.S.C. § 1225(b).

"Substantive due process analysis must begin with a careful description of the asserted right." *Reno v. Flores*, 507 U.S. 292, 302 (1993) (internal quotation marks omitted). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Lousiana*, 504 U.S. 71, 80 (1992)). Petitioner's liberty interest is determined by his legal status in

the United States and the statutory and regulatory framework that permits his detention. Once Petitioner's liberty interest is defined, this Court considers the current Supreme Court precedent regarding civil detention of aliens to determine whether Petitioner's detention under Section 1225(b)(2) is unconstitutional as applied to him given he has been detained for over twenty months without any individualized assessment ever.

1. *Petitioner is being detained under 8 U.S.C. § 1225(b)(2) as an "arriving alien."*

It is undisputed Petitioner is being detained under Section 1225(b)(2). ECF No. 4 at 1. Section 1225(b) applies to an "applicant for admission," that is, "[a]n alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). Under § 1225(b)(1), an applicant for admission "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation" is "normally ordered removed 'without further hearing or review' pursuant to an expedited removal process." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018) (quoting 8 U.S.C. § 1225(b)(1)(A)(i)). All other applicants for admission are covered by § 1225(b)(2), which "serves as a catchall provision," *Jennings*, 583 U.S. at 287, and which mandates detention "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted," 8 U.S.C. § 1225(b)(2)(A). But if the alien applies for asylum and has a credible fear of persecution,[4] "the alien shall be detained for further consideration of the application." 8 U.S.C. § 1225(b)(1)(B)(ii).

---

[4] Upon a positive credible fear determination, an alien is placed in section 240 removal proceedings, rather than the expedited removal proceedings described above, for a determination of the asylum claim. *See* 8 C.F.R. § 1235.6(a)(1)(ii).

Pursuant to 8 U.S.C. § 1225(b)(2)(A), arriving aliens—including those with a positive credible fear determination—are to be detained unless one of the limited statutory exceptions applies, allowing the Government to release the alien on parole. *Rodriguez v. Robbins*, 715 F.3d 1127, 1132 (9th Cir. 2013) ("*Rodriguez I*") However, the decision to release on parole is solely in the Attorney General's discretion, and unreviewable by an immigration judge or Article III courts. *See generally* 8 U.S.C. § 1182(d)(5)(A) ("The Attorney General may. . . in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States. . . ."); 8 U.S.C. § 1252(a)(2)(B)(ii)) ("[N]o court shall have jurisdiction to review . . . any other decision or action of the Attorney General. . . the authority of which is specified under this subchapter to be in the discretion of the Attorney General."). Accordingly, unless released on parole, an arriving alien will remain detained during the remainder of his removal proceedings. Here, Petitioner applied for admission to the United States at a port of entry on August 28, 2024, and has remained detained since. ECF No. 4 at 2.

   2.  *Arriving aliens are entitled to due process.*

There is no doubt that Petitioner's status as an arriving alien does not place him outside the ambit of constitutional protection. After all, the Supreme Court has made clear that "the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003). The real question is how much process an "arriving alien" is entitled to. Here, Petitioner is an arriving alien whom Respondents have determined is inadmissible — *i.e.* an "inadmissible alien". ECF No. 4 at 2. Inadmissible aliens, as distinguished by the Supreme Court,

are not afforded the same breadth of rights as citizens or as aliens who are already present in the United States. In *Zadvydas*, the Court explained:

> [t]he distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law. It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders. But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all "persons" within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.

*Zadvydas*, 533 U.S. at 693. Inadmissible aliens seeking entry are subject to the "entry fiction." Under the "entry fiction" aliens who have been denied admission to the United States yet are present within its borders are "treated, for constitutional purposes, as if stopped at the border," and are thus not entitled to the full range of constitutional protections to which citizens and aliens who have been admitted are entitled. *Id.* So while an inadmissible alien seeking entry is definitively entitled to due process, he may not be entitled to the same level of due process as afforded to the resident aliens in *Demore* and *Zadvydas*. Nonetheless, "whatever due process rights excludable aliens may be denied by virtue of their status, they are entitled under the due process clauses of the fifth and fourteenth amendments to be free of gross physical abuse at the hands of state or federal officials." *Lynch v. Cannatella*, 810 F.2d 1363, 1374 (5th Cir. 1987).

In *Zadvydas*, the Supreme Court noted that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem." *Zadvydas,* 533 U.S. at 690. Because the statute's primary purpose for detaining aliens was to ensure an alien's presence for removal, the *Zadvydas* Court construed § 1231 to allow detention of post-removal aliens only for "a period reasonably necessary to bring about [an] alien's removal from the United States." *Id.* at 689. The

Supreme Court "construe[d] the statute to contain an implicit 'reasonable time' limitation, the application of which is subject to federal-court review" and held that six months was a presumptively reasonable detention period. *Id.* at 682, 701. After this six-month period, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing." *Id.* Several years later, the Supreme Court extended *Zadvydas* to find that inadmissible aliens held in post-removal detention are also entitled to this type of individualized review once their detention exceeds six months. *See generally Clark v. Martinez*, 543 U.S. 371 (2005) (extending *Zadvydas'* holding to inadmissible aliens as a matter of statutory interpretation).

In *Demore*, the Supreme Court condoned only brief mandatory detention during the pendency of removal proceedings for aliens detained under Section 1226(c), a statute that provides for mandatory detention of aliens who have been "convicted of one of a specified set of crimes." *Demore*, 538 U.S. at 513. The Court reasoned that "Congress, justifiably concerned that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers, may require that persons [] be detained for the brief period necessary for their removal proceeding." *Id.* at 513. Brevity was a prominent consideration for the Court.[5] In distinguishing the case from *Zadvydas*, the Court noted that the mandatory detention at issue was "of a much shorter duration" than the indefinite and potentially permanent detention in *Zadvydas*. *Id.* at 528. The Court explicitly found that detention under § 1226(c) "lasts roughly a

---

[5] *See generally Shokeh v. Thompson*, 369 F.3d 865, 872 (5th Cir. 2004) ("*Shokeh I*") (explaining that "[t]he *Zadvydas* Court was troubled by the 'potentially permanent' nature of the detention," and that the *Demore* Court upheld the civil detention, "in part, because of the 'very limited time of the detention at stake'"), *vacated on other grounds*, 375 F.3d 351 (5th Cir. 2004) ("*Shokeh II*").

month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which an alien chooses to appeal." *Id*. at 530. Accordingly, the Court held mandatory detention under Section 1226(c) was constitutional. *Id*. at 531.

Because brevity of detention was at the forefront of the Court's analysis in *Demore*, lower courts have since held Section 1225(c) is subject to a reasonableness limitation. *See, e.g.*, *Diop v. ICE/Homeland Security,* 656 F.3d 221 (3d Cir. 2011) (reading a reasonableness limitation into § 1226(c) and finding that a nearly three-year detention under § 1226(c) was unreasonable, and therefore, unconstitutional) *overruling on other grounds recognized in Borbot v. Warden Hudson Cty. Corr. Facility*, 906 F.3d 274, 278 (3d Cir. 2018) (noting *Jennings v. Rodriguez* did not call into question the constitutional holding in *Diop* that detention under § 1226(c) may violate due process if unreasonably long); *Ly v. Hansen*, 351 F.3d 263, 273 (6th Cir. 2003) (reading a reasonableness limitation into § 1226(c) and finding that detention for one and half years under § 1226(c) was unreasonable) *abrogated on other grounds by Jennings,* 583 U.S. 281; *Uritsky v. Ridge*, 286 F.Supp.2d 842, 846–47 (E.D. Mich. 2003) (reading a reasonableness limitation into § 1226(c) and finding that eleven to twelve month detention under § 1226(c) was unreasonable); *Reid v. Donelan*, 991 F.Supp.2d 275, 277 (D. Mass. 2014) (reading a reasonableness limitation into § 1226(c) and finding that detention over six months is presumptively unreasonable).

In the Fifth Circuit, one case is persuasive. While the Fifth Circuit has not clearly stated mandatory immigration detention is subject to a reasonableness limit, it has expressed doubts as to the constitutionality of prolonged mandatory immigration detention. In *Shokeh I*, an alien remained in detention pursuant to § 1231 solely because he was unable to afford bond. *Id*. The Fifth Circuit remanded the case to the district court to determine if the amount of bond was

9

reasonable, explaining that the *Zadvydas* Court's concern over indefinite detention "is not ameliorated by release conditional on bond that the immigrant is unable to pay." *Id.* at 872–73. The Fifth Circuit reasoned

> [t]he *Zadvydas* Court was troubled by the "potentially permanent" nature of the detention .... The Supreme Court again emphasized the importance of the duration of detention in *Demore v. Kim*. In *Kim,* the Court upheld mandatory detention during removal proceedings of immigrants previously convicted of certain criminal offences, in part, because of the 'very limited time of the detention at stake under [the challenged statute].'

*Id.* at 872. *Shokeh I* was later vacated because the government released the alien without bond before the opinion was filed, rendering the case moot. *See Shokeh II*, 375 F.3d at 351. But, while *Shokeh I* is no longer precedential, it remains persuasive.

In sum, this Court agrees with the line of lower courts that have found civil detention of aliens is subject to a reasonable time limitation. *See, e.g. Maldonado v. Macias*, 150 F.Supp.3d 788, 805 (W.D. Tex. 2015) (collecting cases); *Castro v. U.S. Dept. of Homeland Sec.*, 835 F.3d 422, 449 n. 32 (3d Cir. 2016) ("We doubt, for example, that Congress could authorize, or that the Executive could engage in, the indefinite, hearingless detention of an alien simply because the alien was apprehended shortly after clandestine entrance."). Arriving aliens, even if at the lower level of due process totem pole, are still entitled to due process, and a statute permitting their indefinite detention is subject to constitutional scrutiny.

*3. Detention under Section 1225(b) is subject to a reasonableness time limitation.*

After due consideration, this Court finds Section 1225(b)(2) is subject to a reasonable time limitation. Once detention becomes unreasonable, the Due Process Clause demands a hearing, at which the Government bears the burden of proving that continued detention is necessary to fulfill

the purposes of the detention statute.  A reasonable time limitation alleviates the Supreme Court's concern of the overbreadth of detention as expressed in *Zadvydas*. *Zadvydas* noted that removal proceedings were civil, not criminal, in nature, and held that *if* the government wished to *indefinitely* detain a removable alien, it must show a "strong special justification" for such detention. *Zadvydas,* 533 U.S. at 690. The Court has made clear that the general goal of preventing danger to the community is insufficient to support indefinite civil detention. *Id.* at 690–91. ("we have upheld preventive detention based on dangerousness only when limited to specially dangerous individuals and subject to strong procedural protections.").

"In cases in which preventive detention is of potentially *indefinite* duration, [the Court] ha[s] also demanded that the dangerousness rationale be accompanied by some other special circumstance, such as mental illness, that helps to create the danger." *Id.* at 691 (citing *Kansas v. Hendricks,* 521 U.S. 346, 368 (1997)) (emphasis in original). Furthermore, *Zadvydas* noted that "where detention's goal is no longer practically attainable, detention no longer 'bear[s][a] reasonable relation to the purpose for which the individual [was] committed." *Zadvydas,* 533 U.S. at 690 (quoting *Jackson v. Indiana,* 406 U.S. 715, 738 (1972)). The *Zadvydas* Court found that preventing danger to the community was not an adequate justification for indefinite detention of aliens under § 1231 where "the provision authorizing detention does not apply narrowly to a small segment of particularly dangerous criminals, say, suspected terrorists, but broadly to aliens ordered removed for many and various reasons, including tourist visa violations." *Zadvydas*, 533 U.S. at 691.

Here, the same reasoning applies to Section 1225(b)(2), which is a "catch-all provision." Aliens detained under this provision do not always have any sort adjudication of removability. Even when

they do, an order of removal does not have full legal effect until it becomes administratively final.[6]

Individuals detained under Section 1225(b)(2) could be in expedited removal proceedings, which are generally quick, or in full removal proceedings, which could last years. During the pendency of removal proceedings, the statute itself mandates detention without the opportunity for an individualized determination at any point on whether detention advances the purposes of the statute. In effect, the statutory language authorizes indefinite detention without any individualized "strong special justification."

From a constitutional perspective, this cannot be so easily accepted. While Congress certainly has the purview of establishing structures and procedures for the detention of different categories of non-citizens, Section 1225(b)(2) is riddled with the same constitutional concerns the Court expressed in *Zadvydas.* The Court made clear removal proceedings were civil, not criminal, and held that *if* the government wished to *indefinitely* detain a removable alien, it must show a "strong special justification" for such detention. *Zadvydas,* 533 U.S. at 690. The crux of Section 1225(b)(2)'s generalized "catchall" nature is that it does not provide for an individualized review of an alien's custody ever — no matter if for example, they are internationally convicted criminals

---

[6] "[I]n the deportation context, a 'final order of removal' is a final order 'concluding that the alien is deportable or ordering deportation.'" Nasrallah v. Barr, 590 U.S. 573, 79 (2020) (citing 8 U.S.C. § 1101(a)(47)(A)) ("The term "order of deportation" means the order of the special inquiry officer, or other such administrative officer to whom the Attorney General has delegated the responsibility for determining whether an alien is deportable, concluding that the alien is deportable or ordering deportation.

        (B) The order described under subparagraph (A) shall become final upon the earlier of--
        (i) a determination by the Board of Immigration Appeals affirming such order; or
        (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals.").

or victims of international human rights violations.[7] Accordingly, the Court finds Section 1225(b)(2) must be subject to a reasonable time limitation before the government must provide an individualized assessment as to whether detention continues to serve the statute's purpose.

Other courts that agree Section 1225(b) is subject to a reasonableness limitation on impose either a bright-line rule or assess reasonableness on a case-by-case basis. *Compare Rodriguez II*, 804 F.3d at 1078 ("Following *Zadvydas*, we have defined detention as 'prolonged' when 'it has lasted six months and is expected to continue more than minimally beyond six months.'") *with Ly*, 351 F.3d at 271 (6th Cir.) ("A bright-line time limitation, as imposed in *Zadvydas*, would not be appropriate for the pre-removal period.") *and Diop*, 656 F.3d at 232–33 (3d Cir.) ("At a certain point, continued detention becomes unreasonable and the Executive Branch's implementation of § 1226(c) becomes unconstitutional unless the Government has justified its actions at a hearing inquiring into whether continued detention is consistent with the law's purposes of preventing flight and dangers to the community. This will necessarily be a fact-dependent inquiry that will vary depending on individual circumstances. We decline to establish a universal point at which detention will always be considered unreasonable.").

Given the diverse nature of each immigration case, the Court finds it most appropriate to conduct an individualized assessment of whether detention has become unreasonably prolonged in the pre-final removal order context on a case-by-case basis. Courts balance and consider "the length of detention to which the petitioner has already been subjected, the likelihood of deportation, the potential length of the detention into the future, the likelihood that release will

---

[7] Noncitizens mandatorily detained under Section 1225(b)(2) can only request discretionary parole from the Attorney General, a decision that is protected from any additional review. 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 1003.19(h)(2)(i)(B).

frustrate the petitioner's actual deportation, and the danger to the community posed by the petitioner if released." *Ly*, 351 F.3d at 268 (citation omitted).

B. Petitioner's detention is unreasonable.

Having determined Section 1225(b)(2) is subject to a reasonable time limitation, this Court turns to whether Petitioner's detention of over 20 months is unreasonable, thereby rendering Section 1225(b)(2) unconstitutional as applied to him. Petitioner argues his detention is unreasonable because he "has been detained over [twenty] months, without release, despite the civil nature of his immigration proceedings." ECF No. 1 at 3. In response, Respondents assert Petitioner is subject to mandatory detention during the duration of his removal proceedings, no matter the length, and rebut Petitioner's argument by noting *Zadvydas* does not apply to Petitioner because he does not have a final order of removal. ECF No. 4 at 1; ECF No. 8 at 1. The Court notes the Respondents are correct in their legal assertions. However, the question here is whether, notwithstanding each of those correct points, Petitioner is nonetheless entitled to some relief because of the Constitution's demand there be some reasonable time limitation on the duration of immigration detention in removal proceedings before Respondents must make individualized determinations to justify continued detention.

On balance, Petitioner's detention has become unreasonable. Petitioner has been detained for over 20 months. The potential length of the detention also weighs in his favor given Respondents did not provide even a general timeline for when Petitioner's appeals will be resolved by the Board of Immigration Appeals. Further, it is not likely that release will frustrate Petitioner's actual deportation in the event his removal order becomes final given his spouse and two children were admitted to the United States as arriving aliens on the same date of his arrival and detention,

and Petitioner has provided his family's information as well as that of a willing sponsor. ECF No. 1 at 29–30. Petitioner notes he does not have any criminal history, nor disciplinary infractions during detention, and is not a danger to the community because he does not have a history of violence or criminal activity. *Id.* After due consideration of the facts of this case, the Court finds Petitioner's detention of over 20 months has become unreasonably prolonged and Section 1225(b)(2) is unconstitutional as applied to him. Thus, Petitioner is entitled to a hearing at which Respondents bear the burden of proving that continued detention is necessary to fulfill the purposes of the detention statute.

## CONCLUSION

For the reasons stated herein, the Court finds Section 1225(b)(2) is unconstitutional as applied to Petitioner.

Accordingly, **IT IS HEREBY ORDERED** Petitioner Stanislav Em's "Petition for Writ of Habeas Corpus and Emergency Motion for Immediate Release," ECF No. 1, is **GRANTED IN PART**.

**IT IS FURTHER ORDERED** Respondents **SHALL** (1) provide Petitioner with a bond hearing before an immigration judge at which the government shall bear the burden of justifying, by clear and convincing evidence, the dangerousness or flight risk for Petitioner's continued detention; **OR** (2) release Petitioner from custody, under reasonable conditions of supervision, during the pendency of their removal proceedings **no later than May 22, 2026.**[8]

---

[8] Respondents are forewarned that a proceeding where an immigration judge denies bond for lack of jurisdiction does not satisfy Respondents' obligation to provide a bond hearing in compliance with the instant Order. Nor does a hearing in which the Government is not held to its burden as outlined herein. In such event, release from custody is *required*.

15

**IT IS FURTHER ORDERED** Respondents **SHALL FILE** an advisory either (1) informing the Court, in detail, of the reasons for the immigration judge's bond hearing decision held in accordance with the preceding line order, or (2) informing the Court of Petitioner's release **no later than May 26, 2026.**

**IT IS FURTHER ORDERED** that in the event Petitioner is released from custody, Respondents **SHALL RETURN** all personal property in their custody to Petitioner upon release. Such property includes, but is not limited to, identification documents.

**IT IS FURTHER ORDERED** that, following Petitioner's bond hearing or release, the parties **SHALL CONFER** and **FILE** a notice informing the Court whether any matters remain to be resolved in this case **no later than May 29, 2026.**

**IT IS FINALLY ORDERED** the District Clerk's Office **SHALL OVERNIGHT MAIL** a copy of this order to *pro se* Petitioner Stanislav Em at El Paso Service Processing Center, 8915 Montana Ave, El Paso, TX 79925, or the address for that facility on file.

**SIGNED** this **19th** day of **May 2026**.

_____
**THE HONORABLE DAVID BRIONES**
**SENIOR UNITED STATES DISTRICT JUDGE**